**STATE OF LOUISIANA**
**DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS**
**CORRECTIONS SERVICES**

**Department Regulation**
**No. IS-B-4**

**24 July 2022**

# CLASSIFICATION, SENTENCING AND SERVICE FUNCTIONS
## Classification
## Custody Levels and Segregation

1. **AUTHORITY:** Secretary of the Department of Public Safety and Corrections; La. R.S. 36:404.

2. **REFERENCES:** La. R.S. 15:529.1, La. R.S. 15:738, La. R.S. 15:824, La. R.S. 15:829, and La. R.S. 40:964; ACA Standards 5-ACI-2C-02 "Occupancy and Space Requirements," 5-ACI-3C-09 "Prehearing Action," 5-ACI-3C-10 "Prehearing Action," 5-ACI-3D-08 "Protection from Harm," 5-ACI-4A-05 "Admission and Review Status," 5-ACI-4A-06 "Admission and Review Status," 5-ACI-4A-07 "Admission and Review Status," 5-ACI-5B-11 "Special Needs Inmates," 5-ACI-5F-05 "Final Release," and 5-ACI-6C-06 "Special Needs" (Adult Correctional Institutions, 5th ed. March 2020); Department Regulation Nos. HCP27 "Mental Health Program," HCP28 "Mental Health Screening, Appraisal and Examination," HCP30 "Suicide Prevention, Suicide Intervention, and Post Suicide Management and Training," HCP39 "Treatment Segregation," IS-B-1 "Assignment and Transfer of Offenders," IS-B-2 "Initial Classification Plan and Reclassification Plans," IS-B-8 "Certified Treatment and Rehabilitation Program (CTRP) Earned Credits and Adding New CTRP Programs," IS-B-9 "Special Management Offender-Maximum Custody Dormitory Program," IS-C-1 "Food Services," IS-F-1 "Release Procedures," OP-A-3 "Escorted Absences," OP-C-1 "Disciplinary Rules and Procedures for Adult Offenders" and "Offender Rule Book," OP-D-1 "Sentence Computation, Jail Credit, Diminution of Sentence, Violations."

3. **PURPOSE:** This regulation provides guidelines for facility security levels and for custody level assignments for all offenders and provides criteria for Headquarters staff, ARDC Specialists, security staff, health care professionals/providers/personnel, and assigned case managers for objective risk management assessment and classification of offenders.

4. **APPLICABILITY:** Deputy Secretary, Chief of Operations, Regional Wardens, Department and Facility Medical Directors, Department and Facility Nursing Directors, Department and Facility Mental Health Care Directors, and Wardens. Facility Wardens shall be responsible for the overall implementation, compliance, and review of this regulation. Each Warden shall provide appropriate unit written policies and procedures to comply with the provisions of this regulation.

**5. POLICY:** While there is no right to placement at a particular security level, the Secretary's policy is offenders shall be classified and housed according to management and confinement requirements necessary for protection of the public's safety, prevention of escape, maintenance of control and order, the safety of staff, and the safety of offenders. In addition, all offenders entering State facilities shall undergo a series of assessments to determine the specific needs relative to the appropriate reentry programs for each individual offender in order to provide a seamless plan of services and supervision.

**6. DEFINITIONS:**

A. **Alternative Meal Service**: Food provided to comply with medical, religious, or security requirements. Alternative meals shall be designed to ensure basic health needs are met and are provided in strict compliance with policies signed by the Warden, Medical Director, and for religious diets by the appropriate Chaplain. Food loaf is part of a facility's Alternative Meal Service.

B. **Boards:** The following boards, as below defined, shall assist in determining an offender's custody level and placement:

1) **Classification Board:** A multidisciplinary board(s) within each facility responsible for all offender classification decisions.

a. A facility Classification Board shall consist of a minimum of two facility staff members, with those staff members representing each of the following two categories:

i. Classification, Social Services, Medical/Mental Health, and

ii. Security (which member shall be of the rank of Captain or higher).

b. All offenders shall be given notice 48 hours prior to their classification reviews and shall be present for those reviews, unless precluded due to security or other substantial concerns. An offender may waive in writing the 48-hour notice.

2) **Disciplinary Board:** A multidisciplinary board convened to provide a fair and impartial review of an alleged rule violation by an offender. A disciplinary board determines if an offender is guilty or is not guilty of an alleged rule violation and determines an appropriate sanction if the disciplinary board determines an offender in fact is guilty of a rule violation.

3) **Re-entry Services Team:** A multidisciplinary team comprised of a classification officer, a security officer, a mental health provider, and a transition specialist to assist offenders with their transition to

general population or to the community, utilizing an individualized plan and ensuring services are delivered in an effective manner.

4) **Segregation Review Board:** A multidisciplinary team comprised of a classification officer, mental health provider, and a security officer (Major or above) to consider and make recommendations as to whether or not an offender in Protective Segregation, Preventative Segregation, or restrictive housing may be moved to a less restrictive setting or remain in restrictive housing.

C. **Classification of Offenders:** The process for determining the needs and requirements of those for whom confinement has been ordered and for assigning them to housing units and programs according to their needs and existing resources.

1) **Initial Classification:** The first assignment of an offender to a custody level, housing unit, and programming following the reception and diagnostic process.

2) **Reclassification:** A scheduled, systematic classification review of an offender's program status and includes custody level, housing, education, and work assignments. Reclassification includes interim information about the offender's behavior in a facility and program participation, and reclassification permits changes which may be warranted.

D. **Custody Level:** The level of restriction of offender movement within a facility. The type of housing and level of supervision required for an offender. Custody level assignments shall reflect public safety as the first priority, staff and offender safety within the facility as the second priority, and facility or offender needs as the third priority. Other factors, including but not limited to: Offense, sentence, age, adjustment potential, excessive criminal behavior, escape history, transitional work program eligibility date, and observable behavior also shall be considered in all classification decisions. Corrections Services currently has four custody levels:

1) **Maximum Custody**: Offenders assigned to maximum custody are housed in an area (typically a cellblock setting) where they are kept separate from the general population. This may be done: To protect the offender; to protect the general population; to protect the public (significant escape risk); to protect staff; or to protect the stability of the institution. Maximum Custody includes all segregated housing, including Disciplinary Segregation, Investigative Segregation, Preventative Segregation, Protective Segregation, Transitional Segregation, and Working Segregation. Movements inside the secure perimeter of a facility by maximum custody offenders are monitored closely by staff and typically include the utilization of restraints in accordance with written facility procedures and pursuant to Department Regulation No. OP-A-3

"Escorted Absences." Movements outside of a secure perimeter shall be accomplished only under armed supervision or when appropriately restrained or otherwise secured and appropriately supervised.

3) **Medium Custody:** General population dormitory housing area. Movement outside of a secure perimeter is accomplished only under armed supervision or when appropriately restrained (as per Department Regulation OP-A-3) or otherwise secured. Written facility procedures govern internal movement controls.

4) **Minimum Custody:** General population dormitory housing area. Movement outside of a secure perimeter is generally authorized without armed supervision or restraint. Written facility procedures govern the level of staff supervision when outside the secure perimeter, as well as during internal movements.

E. **Earliest Possible Release Date:** The first date on which an offender is legally eligible for release consideration, factoring in the maximum total credits of 360 days of Certified Treatment and Rehabilitation (CTRP) earned credit which may be applied to the offender's projected earliest release date. [See Department Regulation No. IS-B-8 "Certified Treatment and Rehabilitation (CTRP) Earned Credits and Adding New CTRP Programs" for additional information].

F. **Earliest Release Date:** The date on which the offender is legally eligible for release consideration (for example: parole eligibility date, diminution of sentence, etc.).

G. **Extended Restrictive Housing:** Housing which separates an offender from contact with the general population while restricting the offender to his/her cell for at least 22 hours per day and for more than 30 days for the safe and secure operation of the facility.

H. **Facility:** A place, institution, building (or part thereof), set of buildings, or area (whether or not enclosing a building or set of buildings) used for the lawful custody and/or treatment of individuals.

I. **Facility Class:** State prison security level classification, designated as either Class 1 or Class 2.

J. **Facility Class 1:** All security levels.

K. **Facility Class 2:** 99 years or less to earliest possible release date. (See status reductions from EHCC and DWCC as stated in Department Regulation No. IS-B-1 "Assignment and Transfer of Offenders" for additional information.)

L. **Facility Security/Custody Class Designations:**

1) **Class 1:** Louisiana State Penitentiary (LSP), Elayn Hunt Correctional Center (EHCC), Louisiana Correctional Institute for Women (LCIW), and David Wade Correctional Center (DWCC);

2) **Class 2:** Raymond Laborde Correctional Center (RLCC) (to include Allen Correctional Center), Dixon Correctional Institute (DCI), Rayburn Correctional Center (RCC).

M. **Food Loaf:** A baked, non-seasoned, loaf-shaped meal preparation, which consists of items listed on a facility's master menu combined together, which meal preparation shall meet all nutritional standards and shall meet all caloric requirements.

N. **Health Care Practitioner/Provider:** Clinicians trained to diagnose and treat patients, those clinicians including physicians, dentists, psychologists, licensed professional counselors, licensed social workers, podiatrists, optometrists, nurse practitioners, and physician assistants.

O. **Health Care Professional:** Staff who perform clinical duties, such as health care practitioners/providers, nurses, licensed professional counselors, social workers, and emergency medical technicians, all in accordance with their respective scope of training and applicable licensing, registration, certification, and regulatory requirements.

P. **Mental Health Appraisal:** The process of identifying offenders with psychological needs through the review of information obtained in a mental health screening along with any other information regarding the offender's mental health needs. This review, conducted by a mental healthcare practitioner/provider/professional, may include a mental status exam, mental health evaluation, clinical interview, psychological testing, psychological observation, records review, and gathering of collateral information.

Q. **Mental Health Care Practitioner/Provider/Professional:** Mental health staff who are qualified to diagnose and treat patients with a mental illness, (for example: physicians, physician extenders, psychologists, licensed professional counselors, and social workers) in accordance with each health care professional's scope of training and applicable licensing, registration, certification, and regulatory requirements.

R. **Mental Health Care Screening:** A review by a qualified mental health professional or mental health care trained professional of any history of psychological problems and examination of any current psychological problems to determine, with documented reasonable assurances, the offender screened poses no significant risk to themselves or to others.

S. **Multidisciplinary:** Combining or involving more than one field or area of study, training, experience, or expertise.

T. **Offender Sanctioning/Disciplinary Matrix:** A uniform system of administrative sanctions which may be imposed by the Department, which matrix takes into consideration the severity of the violation, behavior, and any prior history of similar violations.

U. **Restrictive Housing:** A placement that requires an offender to be confined to a cell at least 22 hours per day for the safe and secure operation of the facility.

V. **Segregation:** Confinement of an offender to an individual cell separated from the general population.

W. **Segregated Housing/Unit:** Any housing where an offender lives separate and apart from the general population until such time as the Segregation Review Board determines there is no need for further segregation**.**

1) **Disciplinary Segregation:** A maximum custody housing area, typically a cell, where an offender is housed for a definitive period of time as a result of a sanction from a disciplinary hearing.

2) **Investigative Segregation:** A maximum custody temporary holding area, preferably a cell, where an offender is held pending the outcome of a disciplinary hearing, pending a Classification Review Board review, or pending a transfer to an appropriate housing unit.

3) **Preventative Segregation:** A maximum custody housing area, preferably a cell, where an offender's continued presence in general population is a danger to the good order and discipline of the institution and/or whose presence poses a danger to himself, other offenders, staff, or the general public.

4) **Protective Segregation:** A maximum custody form of separation from the general population for offenders requesting or requiring protection from other offenders for reasons of health or safety.

5) **Transitional Segregation:** A maximum custody temporary holding area, preferably a cell, until bed space is available for placement or awaiting a transfer to another institution. Transitional segregation may occur in any segregated housing area.

6) **Treatment Segregation:** A maximum custody area within a facility where offenders who have a mental health disorder with symptoms that are severe and persistent to the point of interfering with the offender's ability to behaviorally and cognitively live in a less structured secure environment are admitted for health observation and care under the supervision and direction of health care personnel. Placement in treatment segregation is reliant on

documented orders from a health care practitioner and/or psychiatrist.

7) **Working Segregation:** A form of maximum custody for a determinate period of time distinguished by access to work and other programs consistent with security restrictions and facility procedures.

X. **Serious Mental Illness (SMI):** For the purpose of this regulation, SMI is defined as a confirmed diagnosis of at least one of the following:

1) Major Depressive Disorder (MDD);
2) Schizophrenia;
3) Schizoaffective Disorder;
4) Bipolar Disorder;
5) Unspecified Schizophrenia Spectrum; or
6) Severe Anxiety Disorder

Note: An SMI diagnosis shall be made only by a mental health care practitioner/provider/professional.

Y. **Special Needs:** A mental and/or physical condition that requires different accommodations or arrangements than a general population offender normally would receive. Offenders with special needs may include, but are not limited to, the emotionally disturbed, developmentally disabled, mentally ill, physically handicapped, chronically ill, the disabled or infirm, and the drug or alcohol addicted.

Z. **Special Management Offenders**: Offenders whose behavior presents a serious threat to the safety and security of a facility, staff, general inmate population, or themselves. Special handling and/or housing are required to regulate their behavior.

AA. **Step-down Program:** A program designed to establish criteria and a system of review to prepare an offender for transition to general population or the community. Individualized programs involve a coordinated, multidisciplinary team approach that includes staff from classification, security, medical health care professionals, and mental health care professionals. Medical personnel shall be part of a multidisciplinary team when offenders who have chronic care or other significant accommodation needs participate in a step-down program.

**7. SEGREGATED HOUSING/UNIT PROCEDURES:**

A. Assignment to Segregated Housing

1) Assignment of offenders to segregated housing shall be limited to those circumstances which pose a direct threat to the safety of people or a clear threat to the safe and secure operations of the facility. Such situations shall be considered, but not limited to:

   a. The relationship between the threat the offender poses and the behaviors articulated during an incident giving rise for the need for segregated housing;

   b. The impact segregated housing may have on the medical and mental health conditions exhibited by the offender and the possible alternatives which may be available to compensate for such conditions; or

   c. A defined list of alternatives which may be available to deal safely with the threat posed by the offender other than segregated housing.

2) An offender shall not be placed in segregated housing on the basis of Gender Identity alone.

3) Offenders with serious mental illness shall not be placed in segregated housing, other than treatment segregation, unless:

   a. Cleared by appropriate Mental Health professional and reviewed by a psychiatrist/psychologist at earliest possible date, using Form IS-B-4-a "Mental Health Segregated Housing Appraisal,"

   b. Not actively psychotic, and

   c. Less restrictive measures cannot assure safety/security of the unit.

4) Offenders deemed to be actively psychotic or who need to be segregated from the general population for medical purposes may be placed in treatment segregation by the appropriate staff pending review by the appropriate health care provider.

5) Female offenders who are determined to be pregnant, are less than eight-weeks post-medical release following a pregnancy, or are caring for a child that is living in a facility shall not be housed in segregated housing unless:

   a. The placement is cleared by the facility Medical Director ***and***

   b. The female offender has engaged in an act violence while incarcerated that either resulted in or was likely to result in

serious bodily injury or death to another ***or*** the use of segregated housing is necessary to reduce a substantial risk of imminent serious bodily injury or death to another, as evidenced by the offender's recent conduct while incarcerated.

6) No female offender determined to be pregnant shall be kept in segregated housing for over 30 days.

7) Confinement of offenders under the age of 18 in segregated housing is prohibited unless:

a. Cleared by Social Services and the Warden or designee ***and***

b. Less restrictive measures cannot assure the safety/security of the unit.

8) Confinement of offenders under the age of 18 years of age in Extended Restrictive Housing is prohibited unless otherwise waived in writing by the Department Chief of Operations.

B. Mental/Behavioral Health Screening and Monitoring upon Assignment and Transfer to Segregated Housing

1) When an offender is transferred to segregated housing, health care personnel shall be notified immediately and shall provide a screening and review as indicated by the protocols established by the Department and Facility Mental Health Directors and Department Regulation HCP39 "Treatment Segregation."

2) If the offender is at imminent risk for serious harm, suicide, exhibits debilitating symptoms of a SMI, or requires emergency medical care, a health care professional shall be contacted immediately for appropriate treatment in accordance with HCP30 "Suicide Prevention, Suicide Intervention, and Post Suicide Management and Training."

3) Offenders in segregation units shall receive a daily visit from a medical health care provider and a weekly visit from a mental health care provider, unless needed more frequently as determined by a medical/mental health care provider(s).

4) The presence of medical and mental health professionals and staff in segregated housing units shall be announced and recorded in the respective segregated housing tier's log book.

5) When an offender is assigned to segregation, a mental health appraisal shall be completed within 7 days of placement utilizing Form IS-B-4-a "Mental Health Segregated Housing Appraisal."

6) If confinement continues beyond 30 days, a behavioral health assessment by a mental health practitioner/provider shall be completed at least every 30 days for offenders with a diagnosed behavioral health disorder and more frequently if clinically indicated.

For offenders without a behavioral health disorder, a mental health assessment shall be completed every 90 days and more frequently if clinically indicated.

7) The ranking correctional supervisor in charge shall make rounds at a minimum of once per shift in all segregated housing areas and shall document those rounds in the tiers' log books.

8) If an offender in segregation is at imminent risk for serious harm or suicide, a mental health care provider(s) shall be contacted immediately for appropriate treatment and shall respond immediately to that notification based on the provider's clinical assessment consistent with applicable clinical standards.

9) A mental health care provider can determine the need to initiate a Mental Health Management Order (Form HCP30-b) and shall determine the observation frequency.

10) Suicidal offenders shall be observed continuously, and the observation shall be documented in the segregated housing tiers' log books.

C. Discharge from Segregated Housing

1) The Disciplinary/Sanctioning Matrix (see Department Regulation OP-C-1) shall govern the time an offender may be in segregated housing for rule violations, except to the extent documented reasons and due process review result in the need for continued preventative segregation due to a threat exhibited by an offender may exist to self, other offenders, or staff.

2) Facilities shall maintain a level system, to be used when needed, as a mechanism for step down to a less restrictive setting.

3) Step-down programs shall be provided to segregated offenders when such programs are needed to facilitate the offender's reintegration into general population or to the community.

4) Segregation step-down programs shall include, at a minimum, the following:

a. Pre-screening evaluation: Monthly evaluations using a multidisciplinary approach (utilizing a minimum of one representative from classification, mental health, and ranking correctional staff) to determine the segregated offender's compliance with program requirements;

b. Subject to those monthly evaluations:

i. Gradually increased out-of-cell time
ii. Gradually increased group interaction
iii. Gradually increased education and programming opportunities
iv. Gradually increased privileges
v. A step-down transition compliance review
vi. Post screening evaluation.

5) When an offender in segregated housing is within one year to the offender's earliest release date ("ERD") from prison he/she shall meet with the Re-entry Services Team to start the preparation for release documentation and to ensure the offender has all required identification forms prior to release, as well as any follow-up appointments scheduled with health care providers and a viable residence plan.

6) Offenders discharging within 60 days shall be placed back into general population whenever possible in accordance with facility safety and security in order to help the offender with a smoother transition back into his/her community based upon a plan developed by the Segregation Review Board.

D. Offender Privileges in Segregated Housing

1) Offenders placed in segregation shall be permitted to exercise the following privileges except as maybe noted otherwise in Chapter 7 of the "Disciplinary Rules and Procedures for Adult Offenders."

2) Offenders assigned to segregated housing shall be allowed to receive all correspondence and to originate correspondence.

3) Offenders shall be allowed clean clothing on a daily basis, toothbrush, toothpaste, deodorant, sufficient heat, light, ventilation, toilet facilities, and the same meals as other offenders, unless the offender's access to basic personal items presents a detailed documented imminent danger that the offender or any other

offender(s) may destroy the items or induce self-injury or injury to others.

4) Offenders assigned to segregated housing shall be provided the opportunity to shave and to shower at least three times weekly. If instances may arise where offenders in segregated housing are not permitted to shave or shower due to health, safety, or security concerns, those instances shall be documented in the applicable logbook with detailed reasons by correctional staff and reviewed by the ranking supervisor in charge of the tier.

5) Offenders assigned to segregated housing shall be provided medications as prescribed.

6) Alternative meal services (food loaf) may be provided to an offender in segregated housing who uses food or food services equipment in a manner hazardous to self, staff, or other offenders. Alternative meal services shall be given on an individual basis and shall be based upon only health or safety considerations. Only the Warden or facility health authority, or their designees, are able to approve alternative meal services to an offender, and that approval shall be in writing. Alternative meal service to an offender shall not exceed 7 days, unless that time period is reviewed first by the authorizing individual, and then extended by written detailed justification and approved by the applicable health care practitioner.

7) Offenders assigned to segregated housing shall be permitted access to reading and to legal materials.

8) Offenders assigned to segregated housing shall be permitted a minimum of one hour of exercise outside of their cells, five days per week, unless a written detailed justification exists due to security or safety concerns and reviewed and approved by the Chief of Operations or designee. Written request to deny exercise outside of an offender's cell shall be submitted utilizing Form IS-B-4-c, "Exercise Outside of Cell Denial Justification Request." Upon review of the submitted written request, verbal approval by the Chief of Operations or designee shall be sufficient, provided that subsequent written approval is documented.

9) Upon assignment or transfer to segregated housing, an offender shall be allowed one phone call (either at the offender's expense or via a collect call) within 24 hours of placement into segregated housing.

10) Offenders assigned to segregated housing also shall be permitted telephone privileges, which shall include at minimum two collect calls per month, unless a written detailed justification exists due to security

or safety concerns and reviewed and approved in writing by the Warden or his designee.

11) Offenders assigned to extended restrictive segregated housing shall be permitted access to programs and services which include without limitation: Educational services, commissary services, library services, social services, behavioral/mental health and treatment services, religious or spiritual guidance, and recreational programs, unless a written detailed justification exists due to security or safety concerns and reviewed and approved by the Warden or his designee.

12) In such instances where facility staff deprives an offender of a usually authorized item or activity due to health, safety, or security concerns, the staff person shall complete a detailed written report and file the report in the offender's medical/mental health file or other appropriate file and forward a copy of the report to the facility's Warden or his designee. Facility staff shall attempt to obtain the Warden's or his designee's written approval before removing any items. No items or activities shall be withheld for the purpose of punishment or for longer than necessary to ensure the offender's and others' safety and well-being.

E. Training Requirements

Staff assigned to segregation units shall receive specialized training and direct supervision on a regular and daily basis.

F. Log Books

Staff shall be required to maintain permanent log books to document the ingress and egress of all staff on segregated tiers; and the Warden and the facility health authority, or their designees, shall review monthly those log books to ensure compliance with this regulation.

**8.** **CUSTODY LEVEL SEGREGATED HOUSING:** Each offender's custody level and housing shall be recommended by the Classification Board to the Warden or designee during initial classification or transfer, pursuant to custody level determinations recommended by other multidisciplinary review boards scheduled throughout the offender's incarceration, or in the event that circumstances , bring about the need for a custody level classification. Special circumstances (for example: Lack of bed space at the appropriate level, medical/mental health care considerations, other special needs, etc.) may be considered when determining an offender's assigned custody level. Custody levels and segregation types are outlined below:

A. Investigative Segregation

1) Any offender assigned to investigative segregation is considered to be in maximum custody.

2) When an offender is under investigation for an alleged rule violation, based upon the nature of the alleged rule violation, an offender, with the approval of the highest ranking supervisor on duty in the unit where the incident occurred or the shift supervisor, may be placed in investigative segregation until his appearance before the Disciplinary Board or Classification Board.

3) This placement shall be approved, denied, or modified within 24 hours (excluding weekends/holidays) by an appropriate and higher authority who was not involved in the initial placement, using Form IS-B-4-b "24 Hour Placement in Investigative Segregation."

4) Any offender placed in Investigative Segregation for a rule violation shall be afforded a disciplinary hearing within 72 hours of being placed in Investigative Segregation. Exceptions include: Official holidays, weekends, genuine emergencies, or for other good cause shown. The offender shall be heard at the next available court date. When it is not possible to provide a full hearing within 72 hours of placement, the accused shall be brought before the Disciplinary Board, informed of the reason(s) for the delay, and remanded back to Investigative Segregation or released to his quarters after a date for a full hearing has been set.

5) For those offenders placed in Investigative Segregation for reasons other than a rule violation, an initial review shall be conducted by the appropriate board within seven days of the date of the report of placement in Investigative Segregation. Exceptions include: Official holidays, weekends, genuine emergencies, exceptional circumstances, unavoidable delays or for other good cause shown. Reasons for all delays shall be documented.

6) The Segregation Review Board shall review the statuses of offenders who are in investigative segregation at least every seven days for the first 60 days and thereafter every 30 days.

7) The Warden or designee shall provide to the Chief of Operations a detailed written justification, as well as copies of any recommendations made by the Segregation Review Board or Disciplinary Board, as applicable, to maintain an offender within investigative segregation for over 90 days.

8) Approval must be granted in writing by the Chief of Operations for any offender to remain in investigative segregation beyond 90 days. This approval shall be granted in intervals not to exceed 90 days per request.

B. Disciplinary Segregation

1) Disciplinary segregation is a rehabilitative tool to assist facility staff to redirect an offender's behavior through discipline, motivation, and therapeutic programming.

2) Assignment to disciplinary segregation shall be for a determinate period of time with reviews by the Segregation Review Board.

3) No offender shall be assigned and transferred to disciplinary segregation, except by action of the Disciplinary Board on the basis of a Disciplinary Report and by imposing sanctions permitted by the Disciplinary/Sanctioning Matrix (see Department Regulation No. OP-C-1 "Disciplinary Rules and Procedures for Adult Offenders") or by an Initial Classification Board upon the offender's transfer from another facility.

4) Facilities shall develop and maintain a step-down system as a mechanism to be used when needed to facilitate an offender's transfer out of disciplinary segregation to general population - working segregation is considered a step down in the level system.

5) Based on the Disciplinary/Sanctioning Matrix (see Department Regulation OP-C-1 "Disciplinary Rules and Procedures for Adult Offenders"), offenders shall be sanctioned as 1st offenders unless they commit a second violation within 12 months; at which time, they shall be sanctioned as a 2nd offender and so on until such time they reach the maximum penalty according to the Disciplinary/Sanctioning Matrix.

C. Protective Segregation

1) Protection concerns generally arise from problems of a current nature within a facility, but protection concerns nonetheless may result from external factors. Protection concerns may be of a short-term or long-term nature, depending upon the facts and circumstances which gave rise to a need for protective segregation.

2) Upon the written request of an offender, or after review by appropriate facility staff upon consultation with a ranking officer, an offender may be placed temporarily in protective segregation for protection and/or the protection of others until the Disciplinary Board or Classification Board, depending upon the request's supported facts and circumstances, reviews the request and recommends appropriate action.

3) The respective board shall conduct its review within 7 days of the offender's placement.

4) Protective Segregation consists of three levels:

a. Level 1 Protective Segregation

Level 1 is a lower level protection assignment and generally made at an offender's request, but may be originated by staff. A Disciplinary or Classification Review Board, depending upon the established facts and circumstances, shall confirm or deny the request and provide written reasons for its decision. All facilities are eligible to house Level 1 offenders Protective Segregation.

The Segregation Review Board shall review Level 1 Protective Segregation offenders every 7 days for the first 60 days and thereafter at least every 30 days.

b. Level 2 Protective Segregation

Level 2 is based upon the nature of an offender's crime, prior employment history (for example: former law enforcement, politician, etc.), age, or other significant protection concerns. Generally, a Level 2 offender is determined to be unable to live in general population at any facility, but may be considered a candidate for placement in general population at some point in the future. This designation may result in the offender's assignment to protective segregation at Louisiana State Penitentiary, Elayn Hunt Correctional Center, David Wade Correctional Center, or the Louisiana Correctional Institute for Women.

The Segregation Review Board shall review Level 2 Protective Segregation offenders every 90 days.

c. Level 3 Protective Segregation

Long-term protection concerns usually due to past history of offense or employment, (for example, former law enforcement or correctional officer). Generally, the offender is determined to be unable to live in general population at any facility and is very unlikely to ever be suitable for general population. These

offenders are housed in the N-5 Protection Unit at David Wade Correctional Center which is an open cell environment.

The Segregation Review Board shall review Level 3 Protective Segregation offenders annually.

D. Preventive Segregation

1) Preventative segregation is a maximum custody housing area, preferably a cell, which may be necessary because an offender's continued presence in general population is a danger to the good order and discipline of the facility and/or whose presence poses a danger to himself, other offenders, staff, or the general public.

2) Offenders are assigned to preventative segregation until the Segregation Review Board concludes the offender can be housed safely in a less restrictive setting.

3) Reviews by the Segregation Review board shall be conducted at a minimum of 60-day intervals.

E. Transitional Segregation

1) Offenders pending transfer to another facility, pending assignment, or pending re-assignment within a facility may be held temporarily in investigative segregation, depending upon the nature of, or the reason for, the transfer.

2) When criteria exist to house a transitioning offender in Investigative Segregation, the offender shall be entitled only to privileges allowed other offenders in Investigative Segregation (see Section 8.A).

F. Treatment Segregation

1) Treatment segregation is at the order of a physician or other appropriate healthcare practitioner/provider and is not considered to be restrictive housing.

2) Treatment segregation shall be utilized only for as long as a medical or mental health risk continues.

3) The physician or appropriate clinical staff shall discontinue treatment segregation at such time.

4) See Department Regulation HCP39 "Treatment Segregation" for additional information about treatment segregation.

G. Working Segregation

1) Working segregation is a form of maximum custody for a determinate period of time distinguished by access to work and other programs consistent with security restrictions and facility procedures.

2) Assignment to the working segregation is for a determinate period of time with reviews at least every 90 days by the Segregation Review Board.

3) This type of assignment is used primarily after a Disciplinary Hearing for an offender found guilty of violating one or more rules according to the Disciplinary/Sanctioning Matrix or as part of the step down from a more restrictive housing.

4) Initial Classification Boards shall have the authority to assign an offender to this custody level upon an offender's transfer into a facility.

5) Working segregation is considered a step down in the level system. Facilities shall use working segregation as a step down from a more restrictive setting unless articulated documented reasons otherwise dictate.

s/James M. Le Blanc
Secretary

Attachment: Informational Handbook for People in Segregated Housing

Forms:

| | |
|---|---|
| HCP30-b | Mental Health Management Order Log Sheet |
| IS-B-4-a | Mental Health Segregated Housing Appraisal |
| IS-B-4-b | 24 Hour Placement in Investigative Segregation |
| IS-B-4-c | Exercise Outside of Cell Denial Justification Request |

This regulation supersedes Department Regulation No. IS-B-4 Custody Levels and Segregation dated 29 August 2021.