UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **CODY C. DANTIN** | **CIVIL ACTION NO. 25-0580** |
| | **SECTION P** |
| VS. | |
| | **JUDGE S. MAURICE HICKS, JR.** |
| **MICHELE DAUZAT, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Plaintiff Cody C. Dantin, a prisoner at David Wade Correctional Center ("DWCC") proceeding pro se and in forma pauperis, moves for a preliminary injunction, seeking to enjoin Warden Michele Dauzat and Sergeant Crane[1] to assign him to "protection/CCR"[2] to protect him from other inmates.[3] [doc. # 16]. For reasons that follow, the Court should deny Plaintiff's motion.

### Background

Plaintiff was previously incarcerated at Louisiana State Penitentiary ("Angola") in Angola, Louisiana. *Id.* He states that at Angola, he reported other inmates for wrongdoing and, as a result, officials at Angola conducted a "massive shake down" and "some big time drug dealers got caught." Consequently, Angola inmates are allegedly trying to kill him at every

---

[1] Plaintiff names additional defendants, but he does not plausibly allege that the other defendants are sufficiently involved in failing to protect him from harm.

[2] Presumably by "CCR," Plaintiff refers to closed cell restriction. [*See* doc. # 26].

[3] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

facility to which he is transferred. *Id.* at 1. He suggests that, at DWCC, he is forced to cut himself and start fires to be moved somewhere safe. *Id.* at 1-2.

Plaintiff alleges that he has "big money on [his] head because [he] got a lot of drug dealers busted at Angola and Hunts[4] . . . ." *Id.* at 2. He alleges specifically that a Mexican inmate, Auther Bastuda, is a drug kingpin and "big time cartel drug dealer" who intends to pay "big money" to other inmates on Plaintiff's tier to kill Plaintiff because Plaintiff "told on his drug porters at Angola and Hunts." *Id.* at 2-4. He states that Bastuda's minions have knives and that "security refuses" to search the inmates. *Id.* Inmates yell "back and forth" about how they are going to kill Plaintiff. [doc. # 16-2, p. 1]. He also stated in a grievance that Bastuda told other inmates on Plaintiff's tier that Plaintiff works for Warden Dauzat. *Id.*

Plaintiff fears for his life at DWCC. [doc. # 16, pp. 1-4]. He fears someone will kill him in his sleep. *Id.* at 2.

Plaintiff informed Warden Dauzat on approximately April 16, 2025, that despite "telling security over and over" that he has "big money on" his head, he is not receiving the protection he desires. *Id.* at 4. Plaintiff alleges that Warden Dauzat and Sergeant Crane fail to respond to his grievances about transferring him to a more protected area and, consequently, are deliberately indifferent to the substantial risk of serious harm to which he is exposed. [doc. #s 1, p. 1; 11-1, p. 2; 16, p. 4; 16-2, p. 1].

On June 6, 2025, the Court ordered Warden Dauzat and Sergeant Crane to show cause why the Court should not grant Plaintiff's motion and order them to assign him to "protection/CCR." [doc. # 17].

---

[4] By "Hunts," Plaintiff presumably refers to Elayn Hunt Correctional Center.

On June 30, 2025, Plaintiff filed an ostensible motion, again seeking a transfer to "protection." [doc. # 23].

On July 7, 2025, Warden Dauzat filed a status report and stated: "Cody Dantin, D.O.C. #515835, was reviewed by the Segregation (CCR) Review Board on July 7, 2025. Although the Board found no evidence of immediate danger to Dantin, the Board agreed to his request for Protective Custody housing on a CCR tier effective today, July 7, 2025." [doc. # 28, p. 1]. Dauzat added, "Dantin will be housed in Protective Custody Level 2 status, and his housing assignment will be reviewed every 90 days going forward." *Id.*

## Law and Analysis

To obtain a preliminary injunction, a movant must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009) (citation omitted). A preliminary injunction is an extraordinary remedy that "should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Planned Parenthood Ass'n of Hidalgo Cnty. Texas, Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012) (citation omitted). "The first two factors of the traditional standard are the most critical. And [t]here is authority that likelihood of success on the merits . . . is the most important of the preliminary injunction factors." *Career Colleges & Sch. of Texas v. United States Dep't of Educ.*, 98 F.4th 220, 233 (5th Cir. 2024) (internal quotation marks and quoted sources omitted).

**1. Mootness**

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969); *Rocky v. King*, 900 F.2d 864, 867 (5th Cir. 1990). Litigants "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (internal quotation and citation omitted).

"This case-or-controversy requirement persists through all stages of federal judicial proceedings." *Dierlam v. Trump*, 977 F.3d 471, 476 (5th Cir. 2020). "If an intervening event renders the court unable to grant the litigant any effectual relief whatever, the case is moot." *Id.* It is "'beyond dispute that a request for injunctive relief generally becomes moot upon the happening of the event sought to be enjoined.'" *Copeland v. Livingston*, 464 F. App'x 326, 330 (5th Cir. 2012) (quoting *Harris v. City of Houston,* 151 F.3d 186, 189 (5th Cir.1998)).

Mootness is jurisdictional and must be raised sua sponte. *Bailey v. Southerland*, 821 F.2d 277, 278 (5th Cir. 1987).

Here, because the Segregation Review Board granted Plaintiff's request for "Protective Custody housing on a CCR tier," which is the precise relief Plaintiff seeks in his motion for preliminary injunction, his motion is moot. "[P]rovision of the specific relief sought by a prisoner moots the claim for that relief." *Higgins v. Navarrete*, 2022 WL 543018, at *3 (5th Cir. Feb. 23, 2022) (finding that a prisoner's request for transfer to "G-2 custody status" was moot because the prisoner was previously transferred to G-2 custody); *see New York State Rifle & Pistol Ass'n, Inc. v. City of New York, New York*, 590 U.S. 336, 339 (2020) (opining, where the

defendant granted "the precise relief that petitioners requested in the prayer for relief in their complaint[,]" that the request for injunctive relief was moot); *Taylor v. Collier*, 2023 WL 8184869, at *1 (5th Cir. Nov. 27, 2023).

The Court should therefore deny Plaintiff's motion for a preliminary injunction as moot.

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Cody C. Dantin's motion for preliminary injunction, [doc. # 16], and motion for protection, [doc. # 23], be **DENIED AS MOOT**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 9th day of July, 2025.

Kayla Dye McClusky
United States Magistrate Judge