# DECLARATION OF WARDEN MICHELE DAUZAT

I, Michele Dauzat, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am the Warden of David Wade Correctional Center ("DWCC"). I am competent to testify to the matters contained herein.
2. Plaintiff Cody C. Dantin (DOC #515835) is an offender currently housed at DWCC.
3. On July 7, 2025, Plaintiff Cody Dantin was placed in Closed Cell Restriction ("CCR") – Protective Custody Level 2 as a *precautionary measure* due to his extensive history of requesting protection and reports of generalized fear for his safety.
4. On July 8, 2025, I received an email from Mr. Dantin's sister stating that he was requesting to move off the CCR tier because he did not feel safe around another inmate housed on CCR. Prior to his placement, a full screening of his record revealed no documented enemies or verified threats residing on the CCR tier on that date.
5. On July 18, 2025, Mr. Dantin received a disciplinary rule violation for property destruction (flooding his cell). He was sanctioned to 10 days of Disciplinary Segregation.
6. After he completed his Disciplinary Segregation, he verbally stated he was not going back to CCR, claiming he could not live on that tier. A Classification Review Board was convened, and based on his own statements, not any verified threat, Mr. Dantin was reassigned to Preventative Segregation Level 1, where he was housed in a single-man cell with continuous camera monitoring.
7. At the next review, Mr. Dantin was approved to progress to Preventative Segregation Level 2, but upon publication of the move, he refused to transfer.
8. Between September 29 – October 7, 2025, Mr. Dantin was moved from N-4 C tier to N-4 A tier because he again reported being unable to live on N-4 C tier.

9. On October 4, 2025, Mr. Dantin's sister again emailed me stating that he could not live on N-4 A tier. I forwarded the request to Deputy Warden Arnold. On October 7, 2025, Deputy Warden Arnold spoke with Mr. Dantin, who then requested to return to N-4 C tier, and Deputy Warden Arnold approved the move.

10. On November 22, 2025, Mr. Dantin's sister emailed a third time, stating he was in danger. Assistant Warden Kimball spoke with Mr. Dantin during rounds on November 23, 2025. At that time, Mr. Dantin's only request was transfer to the CCR "Law Enforcement" tier, which is reserved for offenders who meet specific criteria—criteria he does not meet.

11. When asked, Mr. Dantin could not articulate any specific threat, identify any individuals threatening him, or provide evidence of danger. He repeated only generalized feelings of being unsafe.

12. Since his arrival at DWCC, Mr. Dantin has never been housed with a cellmate because of his continued reports of fear and inability to live with others.

13. In April 2025, Mr. Dantin identified one inmate, Arthur Basaludua, as an enemy based an allegation that Basaludua told others he was "working for the Warden." DWCC found no evidence substantiating any threat or corroborating Plaintiff's claim; however, out of an abundance of caution, DWCC honored his request by placing Basaludua on his enemy list and ensuring that Mr. Dantin remained housed in a single-man cell separate from all other offenders.

14. Mr. Dantin consistently states that he cannot live at any other facility and does not want a transfer out of DWCC.

15. Due to his renewed allegations in late November 2025 and pending further review, Mr. Dantin was reassigned to CCR Protective Custody Level 2 on November 26, 2025 as a precaution.

16. At no time has DWCC identified a credible, specific, or corroborated threat of harm from other offenders. His housing moves have been based primarily on his own shifting and often contradictory statements about where he can and cannot live.

Pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 5th day of December, 2025.

MICHELE DAUZAT
WARDEN, DWCC