**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

CODY C. DANTIN                                    CIV. ACTION NO. 5:25-00580 SEC P

VERSUS                                            JUDGE S. MAURICE HICKS, JR.

MICHELE DAUZAT                                    MAG. JUDGE KAYLA D. MCCLUSKY

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Rule 12(b)(6) motion to dismiss or, in the alternative, motion to strike [doc. # 65] filed by Defendants Captain Davis and Major Nathaniel Gillentine.  The motions are unopposed.  For reasons detailed below, IT IS RECOMMENED that the motion to dismiss be GRANTED IN PART and DENIED IN PART.  IT IS FURTHER ORDERED that the motion to strike be DENIED.

## Background

Plaintiff Cody Dantin ("Dantin") is an inmate at David Wade Correctional Center ("DWCC"), who is proceeding in forma pauperis and representing himself in this matter.  He filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983 on April 21, 2025, against various Defendants, including, as pertinent here, two officers at the DWCC:   Captain Davis ("Davis") and Major Nathaniel Gillentine ("Gillentine").  On July 23, 2025, pursuant to an initial review of the record, as reflected in the associated report and recommendation ("R&R"), the Court dismissed all of Dantin's claims against myriad Defendants sustaining only his Eighth Amendment excessive force claims against Davis and Gillentine.  *See* Aug. 26, 2025 Judgment and July 23, 2025 R&R [doc. #s 44 & 36, respectively].  The Court ordered service on Davis and Gillentine, which the U.S. Marshal Service perfected on September 15, 2025.  (Service Order and Return of Service [doc. #s 37 & 45, respectively]).

Over three months later, on December 26, 2025, Davis and Gillentine (collectively, "Defendants") filed the instant Rule 12(b)(6) motion to dismiss Dantin's amended complaint for failure to state a claim upon which relief can be granted on the basis of qualified immunity. Also, embedded within their motion, Defendants alternatively urged the Court to strike immaterial and prejudicial allegations from the Amended Complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

Dantin did not file a response to the motion and the time to do so has passed. *See* Notice of Motion Setting [doc. # 66]. Accordingly, the motion is deemed unopposed. *Id.* The matter is ripe.

<u>**Analysis**</u>

**I.    Motion to Dismiss**

a)    <u>Rule 12(b)(6) Standard</u>

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." FED. R. CIV. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 667-668 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *Iqbal,* 556 U.S. at

2

556.  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  *See Twombly*, 550 U.S. at 556.  Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal,* 556 U.S. at 679 (citation omitted).  A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely.  *Twombly*, 550 U.S. at 556.

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions.  *Iqbal,* 556 U.S. at 678.  A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id*.  Moreover, Rule 12(b)(6) authorizes courts to dismiss a claim on the basis of a dispositive issue of law, notwithstanding that it otherwise might be well-pleaded.  *See Neitzke v. Williams*, 490 U.S. 319, 326-327 (1989) (citations omitted).

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision."  *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. App'x. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted).  Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory.  Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument."  *Skinner v. Switzer*, 562 U. S. 521, 530 (2011) (citation omitted).  Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used."  *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what

the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly,* 550 U.S. at 555).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id*.

    b)    <u>Qualified Immunity</u>

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983). Section 1983, however, does not create any substantive rights; it simply provides a remedy for the rights designated therein. *Id*. "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Id*. (citation omitted).

To state a cognizable claim for relief under 42 U.S.C. § 1983, "a plaintiff must plead two—and only two—allegations . . . First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Arnold v. Williams*, 979 F.3d 262, 266-67 (5th Cir. 2020) (citation and internal quotation marks omitted). Accordingly, a claim against a state actor in his personal-capacity need not be attributed to a governmental "policy or custom." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

In addition, when, as here, a plaintiff seeks money damages from government officials in their individual capacities under § 1983, the affirmative defense of qualified immunity is available to protect defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The qualified immunity doctrine balances two often conflicting interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*.  As such, "[t]he protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id*. (citations and internal quotation marks omitted).  In effect, qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (citing *Malley v. Briggs,* 475 U.S. 335, 343, 341 (1986) (internal quotation marks omitted).

Qualified immunity is nominally characterized as an affirmative defense.  However, once raised by defendants, it devolves upon the plaintiff to negate the defense by showing that the official's conduct violated clearly established law.  *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citation omitted).  Plaintiff's burden is two-pronged.  *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted).  First, a plaintiff must demonstrate that a defendant(s) violated a constitutional right under current law.  *Id*.  "Second, [plaintiff] must

claim that the defendant's actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id*. (quoted source and internal quotation marks omitted). The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

A law is clearly established when there exists "controlling authority—or a 'robust consensus of persuasive authority'—that defines the contours of the right in question with a high degree of particularity." *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013) (quoted source omitted). Although a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question *beyond debate.*" *Id*. (citations and internal quotation marks omitted). "Courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *D.C. v. Wesby*, 583 U.S. 48, 63–64 (2018) (quoted source and internal quotation marks omitted). Further, "[a] rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that [the rule] was firmly established." *Id*. Nonetheless, there is the "rare possibility that, in an obvious case, analogous case law is not needed because the unlawfulness of the [challenged] conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (citations and internal quotation marks omitted).

In the end, the question becomes whether the right is "sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Hogan*, 722 F.3d at 735 (citations and internal quotation marks omitted).  Because it is plaintiff's burden to establish that the challenged conduct violated clearly established law, the district court may, but is not obliged to, undertake the clearly established law analysis on its own.  *Joseph*, 981 F.3d at 338 (court need not limit its analysis to the cases cited by plaintiff).

When responding to a defendant's invocation of qualified immunity within the context of a motion to dismiss, the plaintiff need not "exceed the short-and-plain-statement standard of Rule 8." *Arnold v. Williams*, 979 F.3d at 267 (citation omitted).  Instead, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.* (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)).  In other words, plaintiff must plead qualified immunity facts with the "minimal specificity" required by *Twombly* and *Iqbal*.  *Id.* ("an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard.").

c)      Excessive Force

"Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the *core judicial inquiry* is . . . whether force was applied in a *good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.*" *Baldwin v. Stalder*, 137 F.3d 836, 838–39 (5th Cir. 1998) (quoting *Hudson v.*

7

*McMillian,* 503 U.S. 1, 7 (1992)).  Several, non-exhaustive factors are relevant to determine

whether unnecessary and wanton infliction of pain was used in violation of a prisoner's Eighth

Amendment right to be free from cruel and unusual punishment, including,

     1. the extent of the injury suffered;

     2. the need for the application of force;

     3. the relationship between the need and the amount of force used;

     4. the threat reasonably perceived by the responsible officials; and

     5. any efforts made to temper the severity of a forceful response.

*Id.* (citation omitted).[1]

---

[1] Furthermore, "although a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is 'directly related to the amount of force that is constitutionally permissible under the circumstances.'" *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017 (alteration in original) (quoting *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013)). Accordingly, "[a]ny force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only." *Id*. (quoting *Brown*, 524 F. App'x at 79); *see generally Thomas v. Comstock*, 222 F. App'x 439, 442 (5th Cir. 2007) (noting that "the use of *de minimus* force—including chemical sprays— can support an excessive-force claim[.]").

    In other words, "as long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Id*. (quoting *Brown*, 524 F. App'x at 79).  This means that if the use of force was unreasonably excessive, a plaintiff only needs to show "some injury." *See Solis v. Serrett*, 31 F.4th 975, 982 (5th Cir. 2022) (holding that nerve pain and a pulling pain was enough injury); *Bone v. Dunnaway*, 657 Fed. App'x. 258, 262 (5th Cir. 2016) ("Although Bone's allegation of injury could be characterized as *de minimis*—bruising and a swollen cheek—whether an injury is cognizable depends on the reasonableness of the force, not just the extent of injury."); *Schmidt v. Gray*, 399 Fed. App'x. 925, 928 (5th Cir. 2010) (pain, soreness, and bruising resulting from an officer's slamming a car's trunk lid on a suspect's finger was a legally cognizable injury).

As relevant here, Dantin alleges that he feared that his life was in danger at the DWCC because he previously had reported inmates for wrongdoing at other prisons. On March 24, 2025, Dantin gave a letter to a prison guard, Sergeant Crane, documenting his safety concerns. [doc. # 32-1]. However, Sergeant Crane read the letter to other inmates and then handed it to an inmate, thereby exposing Dantin to danger. [doc. # 11-1, p. 2]. As a result, Dantin became alarmed and secured his cell door with a sheet. [doc. # 32, pg. 1].

At some point, Gillentine arrived at Dantin's cell and ordered him to untie the door. *Id*. According to Dantin, Gillentine and Davis then sprayed him with a chemical agent in his cell while he was posing no threat. However, in a disciplinary report that Dantin attached to his complaint, Gillentine stated that he sprayed Dantin with a chemical agent because he "had his cell door tied closed with a sheet" and refused two direct verbal orders to "untie the sheet and come to the cell door to be restrained[.]" [doc. # 32-1, p. 6].

Thereafter,

[Dantin] suggests that after Gillentine sprayed him, he was unable to untie his cell door due to the effects of the chemical agent: he was panicked, could not breathe, had chest pains, and was screaming for help. [doc. # 32, p. 2]. It "took 2 hours for Capt. Davis and Major Gillentine to cut through" the sheet tied on his door. *Id*. When they cut the sheet off, [Dantin] "came to the bars and got restrained." *Id*. He claims that Gillentine then escorted him to "N-4 lobby pipe chase in between N-4-A and N-4-B" and ordered him to kneel. *Id*. He claims that while he was on his knees and in full restraints, Gillentine and Davis struck him in his back, neck, and head and sprayed him with a chemical agent in his eyes, mouth, ears, and face "over and over" for over two hours. [doc. #s 11-1, p. 2; 32, p. 2]. He screamed for help, stating that his life was in danger. [doc. # 11-1, p. 2]. He alleges that Gillentine and Davis beat him and sprayed him "out of anger because they had to cut [the sheet] off [his] door[.]" [doc. # 32, p. 2]. He was then escorted to a shower and subsequently placed in "cell # 2 on B-Tier/strip cell." [doc. # 11-1, p. 2]. He suggests that because of the chemical agent and/or beating, nerves in his face near his left eye twitch, and his left ear became infected. [doc. # 32, p. 3].

9

(R&R, pg. 4).

Because Dantin is a prisoner proceeding in forma pauperis, the Court conducted a preliminary screening of his claims pursuant to 28 U.S.C. §§ 1915A and/or 1915(e)(2), which authorizes the sua sponte dismissal of any portion of a complaint that, *inter alia*, fails to state a claim upon which relief can be granted. (R&R, pg. 5). In this case, the undersigned applied the *Hudson* factors to the two sets of sprayings (plus the strikes) alleged by Dantin against Gillentine and Davis, and, after liberally construing Dantin's allegations, found that the Court should retain both sets of excessive force claims against Gillentine and Davis. (R&R, pgs. 10-15). In other words, the undersigned found that Dantin had alleged sufficient facts to support an Eighth Amendment excessive force claim against Defendants. *Id*. The District Court adopted these findings. (Judgment [doc. # 44]).

To the extent that Defendants argue that Dantin's pleadings' are insufficient to support an excessive force claim against Defendants, their argument is foreclosed by the Court's prior determination. Defendants make no effort to address the R&R and do not move the Court to reconsider its prior Judgment. The undersigned is not at liberty to reconsider the Court's prior Judgment or even to make such a recommendation, in the absence of an express motion seeking that relief and/or a concomitant referral for that purpose.

Furthermore, Defendants' argument appears to be limited to the initial application of chemical spray because the motion otherwise ignores Dantin's additional allegations that, after

he was in full restraints, Defendants repeatedly struck him and sprayed him with a chemical agent for a period of over two hours.  [doc. #s 11-1, p. 2; 32, p. 2].[2]

While the Court's prior determination that Dantin stated a plausible Eighth Amendment excessive force claim against Defendants resolves the first prong of Defendants' qualified immunity defense, Dantin still must overcome the second prong, i.e., that Defendants' actions were objectively unreasonable in light of clearly established law at the time of the incident. Defendants contend that there is no binding precedent establishing an Eighth Amendment violation for deploying a chemical agent against an inmate who has tied his cell door shut and refuses commands to untie the sheet.

The undersigned previously cited cases that did not rule out an excessive force claim for Defendants' initial use of chemical spray.  *See, e.g.*, *Woolverton v. Gratz*, 793 F. App'x 341, 342 (5th Cir. 2020) and *Kitt v. Bailey*, 676 F. App'x 350, 351 (5th Cir. 2017).  In *Kitt*, the Fifth Circuit remarked that, "no clearly established law forbids the application of a single burst of a chemical irritant in order to compel a prisoner to comply with an order."  *Kitt*, 676 Fed. App'x at 352.  On initial review, the undersigned observed that there potentially were two bursts of chemical irritant, which could distinguish this case from *Kitt*.  In response to Defendants' motion, however, Dantin has not argued that the bursts were applied sequentially or, even if they were, provided any authority to show that two bursts of spray under the circumstances violated

---

[2] Defendants also contend that Dantin's allegations that they acted "out of anger" are conclusory. Certainly, it is plausible that Defendants acted out of anger or malice given Dantin's allegations that they struck him and doused him with chemical spray for over two hours.

clearly established law.  Accordingly, the undersigned finds that Defendants are entitled to

qualified immunity as to Dantin's excessive force claim for the initial administration of chemical

spray.

As stated previously, Defendants' motion does not address the subsequent two-hours long

spraying and strikes that Dantin alleges Defendants inflicted on him after he was subdued, on his

knees, and in restraints.  In any event, it is manifest that such actions violated clearly established

law in March 2025 when Dantin alleged they occurred.[3]  Accordingly, insofar as Defendants

sought dismissal of Plaintiff's excessive force claim related to the two-hours' long spraying and

strikes, the undersigned finds that Plaintiff's allegations suffice to overcome Defendants'

qualified immunity defense.

---

[3] *See Polk v. State of Louisiana*, Civ. Action No. 25-126, 2026 WL 1130618, at *5 (W.D. La. Feb. 5, 2026) (at the time of the alleged macing in August 2022, the Fifth Circuit and several district courts in this circuit had recognized that a correctional officer's use of force—including the use of a chemical spray like mace—without provocation on a restrained and compliant inmate supports an Eighth Amendment excessive force claim); *Rivens-Baker v. Collier*, Civ. Action No. 23-0334, 2025 WL 642927, at *8 (S.D. Tex. Jan. 17, 2025), *R&R adopted,* 2025 WL 642051 (S.D. Tex. Feb. 27, 2025) (citing, *inter alia*, *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016) ("the Fifth Circuit and a 'robust consensus' of persuasive authority recognized that a prison official's use of force – including the use of a chemical spray – without provocation on a compliant and restrained inmate supports Eighth Amendment excessive force claims"); *Jones v. Gooden*, 2025 WL 1913376, at *3 (M.D. La. Feb. 24, 2025) (clearly established at the time of the violation that an officer could not spray chemical agent on a compliant inmate with no justification for the use of force); *Skinner v. Gautreaux*, 593 F. Supp.3d 383, 393 (M.D. La. 2022) (Fifth Circuit precedent provides that "courts have frequently found constitutional violations in cases where a restrained or subdued person is subjected to the use of force."); *Williams v. Town of Clinton*, Civ. Action No. 23-00119, 2024 WL 72645, at *3 (M.D. La. Jan. 5, 2024) (plaintiff's allegations of an unprovoked beating accompanied by pepper spray, are sufficient to overcome defendant's qualified immunity defense).

12

## II.     Motion to Strike

Motions to strike are governed by Rule 12(f), which authorizes a court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f).  "Motions to strike are disfavored and infrequently granted." *U.S. v. Cushman & Wakefield, Inc.*, 275 F. Supp.2d 763, 767 (N.D. Tex. 2002) (*citing Augustus v. Board of Public Instruction of Escambia County, Florida*, 306 F.2d 862, 868 (5th Cir. 1962)).  As the Fifth Circuit has noted:

> [p]artly because of the practical difficulty of deciding cases without a factual record it is well established that the action of striking a pleading should be sparingly used by the courts. * * * It is a drastic remedy to be resorted to only when required for the purpose of justice. * * * The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy.

*Augustus*, 306 F.2d at 868 (citing *Brown v. Williamson Tobacco Corp. v. U.S.*, 201 F.2d 819, 822 (6th Cir. 1953)).

Moreover, "[a] disputed question of fact cannot be decided on a motion to strike . . . [and] when there is no showing of prejudicial harm to the moving party, the courts generally are not willing to determine disputed and substantial questions of law upon a motion to strike." *Augustus*, 306 F.2d at 868.  When questions of fact or law are present, the court should ". . . defer action on the motion and leave the sufficiency of the allegations for determination on the merits." *Id*.

Defendants contend that Dantin included narrative assertions regarding their alleged motives, generalized claims of retaliation, and conclusory accusations of misconduct that are unsupported by factual allegations and unrelated to the elements of an Eighth Amendment

13

excessive force claim. Defendants suggest that striking these allegations will narrow the case to the dispositive legal issues and will promote the just and efficient resolution of the matter. (M/Dismiss, Memo., pgs. 3-4).

The Court disagrees. Striking the allegations from Dantin's pleading(s) serves no material or useful purpose where the allegations, even if "stricken," will not be removed from the record. Furthermore, the undersigned previously conducted an initial review of Dantin's pleadings which resulted in the dismissal of all his claims and parties, save for his Eighth Amendment excessive force claim. Therefore, the case already has been streamlined. In short, Defendants have not established that the drastic remedy of striking allegations is available or warranted.

## Conclusion

For the above assigned reasons,

IT IS RECOMMENDED that Defendants' Rule 12(b)(6) motion [doc. # 65] be GRANTED IN PART and that Plaintiff's Cody C. Dantin's excessive force claim related to the initial spraying be DISMISSED, with prejudice.

IT IS FURTHER RECOMMENDED that the motion to dismiss [doc. # 65] otherwise be DENIED. Moreover,

IT IS ORDERED that Defendants' motion to strike [doc. # 65] is DENIED.[4]

---

[4] As this motion is not one of the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing

14

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 12th day of May, 2026.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE

---

order of this court.  Any appeal/objection must be made to the district judge in accordance with Rule 72(a).